## THE JANICE.

### THE CORNELL NO. 20.

#### No. 14198.

District Court, E. D. New York.

Jan. 16, 1936.

Lynch, Hagen & Atkins, of New York City (Henry C. Eidenbach, of New York City, of counsel), for libelant.

Kirlin, Campbell, Hickox, Keating & McGrann, of New York City (Robert S. Erskine and H. P. Elliott, both of New York City, of counsel), for claimant.

GALSTON, District Judge.

On the morning of December 29, 1933, the scow Janice was lying at the foot of Dyckman Street Ferry. The previous day, having been unloaded at the Interboro Dock of 600 yards of crushed stone, she was found to be in good condition. She was then towed by the Cornell No. 21 to Dyckman street, Hudson river, to await an up-bound tow. At about 6:15 a. m. the tug Cornell No. 20 arrived at Dyckman street to take the Janice and place her in the up-bound tow of another Cornell tug, the No. 41. The Janice was taken from the dock on short port and starboard hawsers about 25 feet in length. The weather was clear and cold. The wind was coming from the north or northwest and blowing about 6 or 7 miles an hour. The tide was ebb. Soon after the lines were out the tug became stuck in the ice, and the bargee was ordered by the tug captain to let go the lines. The barge was then made fast on the port side of the tug pursuant to the captain's orders. The tow proceeded in an ice field which was broken for a while, and then another field was encountered. This the tug also broke up. The tug kept going, finally meeting clear water, though there were some small floats of ice coming down the river.

They were headed for the tow of the Cornell No. 41, which was proceeding up the river, and, after the lapse of about an hour, reached that tow about midway between Dyckman Street Ferry and Yonkers. On reaching the up-bound tow, the Janice was placed between the first and third scows in the starboard tier of the tow. A line was passed from the bow of the Janice to the stern of the first scow, and the Cornell No. 20 then pushed the Janice into the tow. In this movement the bargee claims that the port side of the Janice was forced through more ice. After having been tied up in this way for about three or four minutes, the bow of the barge began to settle and presently sank. There is some contradiction about the actual time of sinking.

The bargee's story would fix the sinking at about 7:15 a. m., whereas, according to the testimony of witnesses for the Cornell, the Janice sank, decks to, at about 8 o'clock, more than almost an hour after she had been placed in the tow. It is significant, however, that the entry to this effect in the log of the Cornell was not made contemporaneously with the sinking, but after getting to Yonkers at 9 a. m. or later, at about the time of a telephone call by the master of the Cornell No. 41 to the Cornell office. I cannot, therefore, accept the entry made in that way as evidence tending to discredit the testimony of the captain of the scow. The survey of the damage to the Janice disclosed that three bow planks were crushed and broken at the light water line; the planking seams on both port and starboard sides had been cut in at the water line; and one length of wearing piece on both starboard and port sides broken. The surveyor testified that the damage was the result of having struck a fairly hard object and that the damage of both the port and starboard sides, in the planking seam, was naturally the result of having been gouged from some object at the water line. It was his opinion that it could have been occasioned by contact with heavy ice.

On behalf of the Cornell, it is claimed that those on the tug No. 20, though within close hailing distance of the Janice, received no notice from anybody that the Janice was leaking or in any difficulty; and, moreover, that the captain of the No. 41 knew nothing about any damage to the Janice until he received a hail from the men on the tow, and on coming back found the Janice in a sunken condition.

The bargee on the Janice at the time that the Cornell No. 20 took her on her port side said to the captain that it was dangerous to tow that way, and the latter answered, "Oh, I guess it will be all right," though this is denied by the captain of the tug. It may well be that the captain of the No. 20 received no word of the sinking, because, after all, the bargee must have been busy with his lines when the No. 20 placed the Janice in the No. 41's tow. Moreover, the bargee testified that the Cornell No. 20 was not in the vicinity at the time that his barge began to settle. The defense of the Cornell seems to rest on the testimony of Oliver, its superintendent, who testified

that he had had a talk with Amar, the marine superintendent of the Trap Rock Company, on the afternoon of December 28th. Amar had an order for some eight scows to go up the Hudson light to Verplanck, and Oliver informed him that the river was congested with ice and cautioned against his going up, but, said Oliver, Amar persisted in placing the order for the tow. Though this witness made an excellent impression, his letter of January 17, 1934, to the auditor of the Trap Rock Corporation, after disclaiming liability for the damage, stated: "The damage to the scow 'Janice' was one that was caused by the ice conditions that arose at the time. Heavy ice, that was not anticipated, was forming on the Hudson River, and it was while towing through this ice and endeavoring to seek a landing place, as we understand it, that the damage occurred."

One cannot reconcile the statement that ice conditions were "not anticipated" with the witness's testimony that he had told Amar "that the river was congested with ice and I cautioned against going up, and he insisted we had to go."

There remains the question as to whether the facts disclose any negligent operation by the tug. The Janice was in tow of the Cornell tug No. 20 for at least one hour, and during most of that time, instead of being towed by head lines, was taken alongside. Ice was encountered during this period. Even the admissions of the witnesses for the Cornell show that ice was floating in the river, though they say that the ice was along shore and not in midstream. However, Gritmon, a pilot on the Cornell No. 20, describing the trip up the Hudson that morning when the tug went into Dyckman street for the Janice, said that he first encountered, just above Fort Washington Bridge, small fields of floating ice, and that the ice condition at Dyckman street, where the Janice was docked, showed ice along the shore about 200 feet out. Another witness of the respondent, Kuyl, a deck hand on the Cornell No. 20, admitted that there was some drift ice in the river off Dyckman street, and he admitted that there was considerable drifting ice in the river that day. That there was a congestion in ice in the river too is proved by the fact that the Cornell No. 41 and her up-bound tow were fast when the Janice came alongside. And, finally, the Oliver letter that has been referred to shows that there was heavy ice that had not been anticipated.

It would seem to me that the conclusion is inescapable that the improper towing by the Cornell No. 20 in taking the Janice alongside, in view of the prevailing conditions in the river, was the cause of the damage. The case is not unlike The Bear (D.C.) 11 F.(2d) 607, in which negligence was found in attempting to force the barge while alongside through the ice, instead of towing it at the stern on short hawsers. See, also, The Mary C. Black (D.C.) 40 F.(2d) 304.

The libelant may have a decree. If this opinion is not in sufficient compliance with the rule requiring findings of fact and conclusions of law, submit findings of fact and conclusions of law in accordance therewith.